UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ALESSANDRO RAMIREZ,
                            Plaintiff,

                 -v-

CITY OF NEW YORK,
                            Defendant.

23-CV-9450 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Plaintiff Alessandro Ramirez brings a variety of federal, state, and local claims against Defendant City of New York (the "City") relating to its alleged refusal to accommodate Ramirez's asthma by permitting him to work remotely. Before the Court is the City's motion to dismiss the complaint in its entirety. For the reasons that follow, the motion is granted.

**I.    Background**

    **A.    Factual Background**

    The following facts, taken from Ramirez's complaint, are assumed true for the purposes of this opinion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). In or around 2015, Ramirez began working as a Certified Information Technology Administrator for the City. (ECF No. 1 ("Compl.") ¶ 6.)[1] Ramirez's job responsibilities include "overseeing network infrastructure, maintenance across various environments, monitoring and securing data platforms for optimal performance and recovery, and collaborating with application owners and development teams to ensure seamless schema and data migration for timely, high-quality

---

[1] The complaint contains two, non-continuous sets of numbered paragraphs. In this Opinion and Order, references to a numbered paragraph are to those numbered paragraphs beginning under the header "Parties" at the bottom of the second page of the complaint. Otherwise, page numbers are used.

solutions." (*Id.* ¶ 7.) Ramirez also has "chronic asthma and hypertension," which cause "tightness in the chest, difficulty in breathing, sudden dizziness, and vision loss," all of which limit his mobility. (*Id.* ¶ 8.)

At the onset of the Covid-19 pandemic in March 2020, the City ordered all non-essential workers, including Ramirez, to work from home. (*Id.* ¶ 10.) Though he worked in person before the pandemic, Ramirez contends that "his duties and responsibilities were capable of being completed remotely even then." (*Id.* ¶ 11.) In March 2020, Ramirez "filed a reasonable accommodation request with the City for remote work in March 2020." (*Id.* ¶ 20.) Thereafter, he submitted requests for continued remote work every three months, which were granted. (*Id.* ¶ 13.) However, Ramirez alleges that "beginning in or around June 2020 and continuing through 2021, [he] was denied vacation time because he was working remotely." (*Id.* ¶ 14.)

In February 2021, Ramirez submitted another remote-work accommodation request for the period between March and May 2021, along with supporting "medical documentation," as he had done in the past. (*Id.* ¶¶ 16-17.) That request "was not granted for more than two months." (*Id.* ¶ 18.) "During that time, [Ramirez] was ordered to return to work in-person." (*Id.* ¶ 19.) And after that February 2021 request, "the City began to amend the Plaintiff's duties and responsibilities to assign the Plaintiff work that required him to be on-site." (*Id.* ¶ 20.) Ramirez responded by reiterating his request for accommodation and supplying additional medical information to support that request. (*Id.* ¶¶ 22-23.) The City explained that personal protective equipment would be made available, but Ramirez countered that he was "medically advised to avoid wearing facemasks so that his breathing would not be obstructed due to his asthma." (*Id.* ¶¶ 24-25.) "The City continued to order [Ramirez] to return to work on-site despite the on-site availability of other staff that were tasked to perform the same duties and responsibilities" as

Ramirez. (*Id.* ¶ 26.) The City also repeatedly reiterated to Ramirez that his request for remote work was "pending," but that he needed to return to remote work in the meantime. (*Id.* ¶ 27.) When Ramirez did not do so, "the City disciplined [him] and gave him poor evaluations for the first time in his career." (*Id.* ¶ 28.)

On April 2, 2021, "Ramirez filed a Complaint with the New York State Division of Human Rights ('NYSDHR'), alleging that the City failed to grant his request for a reasonable accommodation." (*Id.* ¶ 29.) Thereafter, the City initially granted the accommodation request but rescinded it during the pendency of the NYSDHR investigation. (*Id.* ¶ 30.) Ramirez suffered a variety of stress-related injuries in May 2021 (*see id.* ¶¶ 31-33), and the NYSHDR found "no probable cause" for Ramirez's complaint in September 2021 (*id.* ¶ 34).

In September 2021, Ramirez, like all City employees, was "directed to return to work" and required to wear face coverings in all communal spaces. (*Id.* ¶¶ 35-36.) Ramirez again explained that he could not wear face coverings because of his asthma and requested to work remotely full-time, submitting supporting "medical documentation." (*Id.* ¶¶ 37-39.) In response, "the City asked for permission to discuss [Ramirez's] health with [his] physician." (*Id.* ¶ 40.) Ramirez has still not been granted a full-time remote-work accommodation. (*Id.* ¶ 43.)

**B.     Procedural Background**

On or about October 4, 2021, Ramirez filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 15-1 ("EEOC Charge").) He received notice of his right to sue on July 31, 2023. (Compl. at 2.) He filed the complaint in the present action on October 27, 2023. (Compl.)[2]  The City filed a motion for

---

[2] Ramirez's complaint misstates the date of filing of both the EEOC charge (incorrectly alleged to have been filed on August 1, 2023) and of this action (incorrectly alleged to have been

judgment on the pleadings and to dismiss the complaint in its entirety on September 9, 2024 (ECF No. 24), as well as a supporting memorandum (ECF No. 25 ("Mem.")).  Ramirez opposed the motion on September 25, 2024.  (ECF No. 30 ("Opp.").)  The City replied in further support on October 2, 2024.  (ECF No. 31.)  The Court stayed the action pending the disposition of the motion to dismiss.  (*See* ECF No. 32.)

## II.     Legal Standard

The City moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which "is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include enough facts to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true but need not accept as true "mere conclusory statements" reciting the elements of a cause of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555.  A complaint that pleads facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

## III.    Discussion

Though the complaint and opposition are threadbare and at times facially incomplete, a generous reading of both suggests Ramirez asserts claims under the ADA and Rehabilitation Act for failure to accommodate his disability, retaliation, and the maintenance of a hostile work

---

filed on October 30, 2023).  (*See* Compl. ¶¶ 3, 6.)  The Court may take judicial notice of the proper dates.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

environment. (*See* Compl. ¶¶ 44-57.) He also asserts claims under the NYSHRL and NYCHRL. (*See id.* at 7.) The Court, after resolving threshold issues raised by the City, concludes that Ramirez fails to state any federal claim and declines to exercise supplemental jurisdiction over the remaining state and local claims.

### A.     Threshold Issues

As a starting matter, Ramirez ignores the City's argument that he failed to timely raise his discrimination claims before the EEOC because he did not include in his EEOC charge "factual allegations sufficient to alert the EEOC to the possibility that he was denied vacation time because he was working from home." (Mem. at 26.) It is true that, "[b]efore commencing an action in federal court alleging violations of the ADA, a plaintiff must first file a timely charge with the EEOC." *Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 83 (N.D.N.Y. Jan. 3, 2022) (citing 42 U.S.C. § 12117). However, "[c]laims not raised in an EEOC charge may nonetheless be deemed exhausted if they are 'reasonably related' to claims that were in fact raised in the charge." *Id.* (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008)). Remarkably, Ramirez's brief fails to respond to this threshold challenge at all. Indeed, it appears to the Court that Ramirez could make a good showing on this score, as his EEOC charge alleges disability discrimination on the basis of his asthma and remote-work requests—claims that are likely reasonably related to his accusation that he was denied vacation time while enjoying that accommodation. Ultimately, the Court need not decide this issue because Ramirez's ADA claims fail on the merits. But if Ramirez is able to adequately amend the complaint, the parties will need to address in any subsequent briefing whether Ramirez abandoned his ADA claims—at least as they relate to denied vacation time—by failing to address the City's argument based on EEOC exhaustion. *See Malik v. City of New York*, 841 F. App'x 281, 283-84 (2d Cir. 2021) (summary order).

As for Ramirez's other federal claims, the City acknowledges that the Second Circuit has "never held that a Rehabilitation Act claim against a non-federal employer is subject to an administrative exhaustion requirement, nor is there any statutory basis for imposing one." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81-82 (2d Cir. 2020). The City contends, instead, that Ramirez's remaining federal claims are untimely under the applicable three-year statute of limitations, *see Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021), as Ramirez "may only assert his claims under the Rehabilitation Act as to the City's actions after October 27, 2020." (Mem. at 26-27.) That poses no hurdle to the consideration of the Rehabilitation Act claims, however, as Ramirez alleges that the denials of his remote-work accommodation, discipline, denial of vacation time, and retaliation all occurred in 2021. (*See* Compl. ¶¶ 14-43.) Accordingly, the Court proceeds to the merits of the federal claims.

### B.    Failure to Accommodate

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that '(1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (cleaned up) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). The City does not dispute the first and second requirements—that Ramirez has a covered disability of which the City had notice. Instead, the City argues that Ramirez has failed to allege that he could perform the essential functions of his job while permanently working from home or that he was ever denied remote work. (*See* Mem. at 30-31.) Ramirez counters that the essential functions of his job could be performed remotely, that the

6

City never granted his remote work request on a permanent basis, and that he was denied vacation time while working remotely.  (*See* Opp. at 7.)  Because Ramirez's failure to allege that the City refused his request to work remotely is sufficient grounds to dismiss the failure to accommodate claim, the Court need not determine whether remote work prevented Ramirez from completing the essential functions of his job.

Ramirez never alleges that, as a result of a denial of one of his requests, he was actually forced to work in-person.  By contrast, his allegations support the opposite (and only plausible) inference: that he continued to work remotely from 2020 to the present and was never terminated, demoted, or docked wages.  Indeed, in October 2021, in his EEOC charge—incorporated into the complaint by reference and thus available for the Court's review, *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)—Ramirez admits that his supervisor "has been requesting me to resubmit the application [to work remotely] every 3 months from March 2020 to the present."  (*See* EEOC Charge at 2.)  Far from raising any plausible inference that Ramirez was actually forced back into in-person work, the complaint, read along with the EEOC charge, essentially alleges the opposite.

Instead, Ramirez premises his failure-to-accommodate claims on "order[s]" and "demand[s]" to return to work with no clear consequence for failure to heed them.  (Compl. ¶¶ 19, 26, 27.)  But not even minor delays—much less provisional or short-term approvals—of a reasonable accommodation constitute constructive denial of the accommodation.  *See Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *3 (S.D.N.Y. Sept. 21, 2022) (collecting cases); *see also Logan v. Matveevskii*, 175 F. Supp. 3d 209, 229-30 (S.D.N.Y. 2016) (noting, that in addition to requiring a longer delay, "courts have typically found something other than mere silence to suggest that the delay was indeed a constructive denial").  No more

actionable is the City's alleged denial of Ramirez's request for the right to work remotely indefinitely. *See also Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 407 (S.D.N.Y. 2007) ("[A]n open-ended, indefinite leave of absence with no guarantee that it would actually enable [the plaintiff] to eventually return to work to perform his essential job functions . . . goes beyond the requirements of the ADA."). And though Ramirez does plead that he was "disciplined" and given "poor evaluations" as a result of his continuing to work remotely, those allegations, as well, are far too nonspecific to put the City on notice of its own potentially actionable conduct. *See Falso v. Ablest Staffing Servs.*, 533 F. Supp. 2d 332, 336 (W.D.N.Y. 2008) (dismissing a failure-to-accommodate claim, in part, because of the insufficiency of the plaintiff's allegation that "he was subjected to unspecified 'demeaning actions'"); *see also Twombly*, 550 U.S. at 559 (noting the cost of proceeding to discovery on allegations of "unspecified (if any) instances of antitrust violations"). Significantly, even if the City had told Ramirez that he would be terminated for failure to work in person, the mere threat of discipline is not actionable under the ADA. *See Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 166-67 (S.D.N.Y. 2020) (quoting *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 402 (S.D.N.Y. 2014)).

      Nor has Ramirez adequately alleged constructive denial of his requested accommodation. To begin, the City moved to dismiss any such claim for failure to allege the necessary element of "discriminatory animus" under that standard. (Mem. at 27 (quoting *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 436400, at *9 (S.D.N.Y. Sept. 21, 2022)).) In his opposition, Ramirez does not dispute that constructive-denial claims require plausible allegations of discriminatory animus or that the complaint does not contain any such allegation. But even if Ramirez had countered those arguments, nothing in the complaint suggests that any City employee acted with animus. In fact, at no point does Ramirez allege the intent of any City

employee at all. "Because, at best, Plaintiff's claim is merely consistent with such misfeasance, yet does not plausibly suggest it, he cannot make out a claim for failure to accommodate on a constructive denial theory." *Cf. Logan*, 175 F. Supp. 3d at 231 (cleaned up).³

The parties also make arguments concerning the ADA's "interactive process," through which "employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *McBride*, 583 U.S. at 99. Though it is true that "[a]n employee who is responsible for the breakdown of the [the] interactive process may not recover for failure to accommodate," *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008) (summary order), there is insufficient factual material in the record for the Court to conclude as a matter of law that Ramirez was responsible for any breakdown between him and the City. In any event, because the complaint is insufficient in other respects, it is unnecessary for the Court to reach issues relating to the interactive process. On the other hand, any breakdown in the interactive process could not form an independent claim against the City, as "the interactive process is not required when the end it is designed to serve—reasonable accommodation—has already been achieved." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015). "Because [the City] provided reasonable accommodation" in the form of remote work, and because Ramirez fails to allege that he spent even one day working in-person during the Covid-19 pandemic, "any failure to engage in an interactive process—even if supported by the record—[would] not give rise to a discrimination claim." *Cf. id.*

---

³ Ramirez's complaint does not assert a claim for interference under the ADA, and the Court is unwilling to read one in for him. In any event, persuasive authority from other circuits suggests such a theory requires alleging an intent to discriminate, which is totally lacking from Ramirez's complaint. *See, e.g.*, *Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024) (quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017)).

Accordingly, the motion to dismiss the federal failure to accommodate claims is granted.

**C.    Retaliation**

The ADA and Rehabilitation Act prohibit covered employers from taking "adverse action against an employee for engaging in 'protected activity.'" *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (quoting *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023)); *see also Natofsky*, 921 F.3d at 353. "An adverse action is 'any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination,' and 'covers a broader range of conduct than does the adverse-action standard for claims of discrimination.'" *Sharikov*, 103 F.4th at 170 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)). "The applicable test in the retaliation context is that a 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 440 (E.D.N.Y. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Ramirez's complaint fails to allege the requisite elements of an ADA or Rehabilitation Act retaliation claim. He alleges that he engaged in protected activity on April 2, 2021 by filing a complaint with the NYSDHR, "alleging that the City failed to grant his request for a reasonable accommodation." (Compl. ¶ 29.) And across both the complaint and the opposition to the motion to dismiss, Ramirez alleges only a single adverse action: that "[t]he City temporarily granted Plaintiff's leave request *after* he filed the NYSDHR complaint, but rescinded the request while the complaint was being investigated." (Compl. ¶¶ 30 (emphasis added), 53; *see also* Opp. at 9.) But, again, Ramirez does not actually allege that because his request was "rescinded," he was actually ever required to work in person. To the contrary, his EEOC charge states that he

10

was granted remote work on September 27, 2021, "with an expected return date of October 30, 2021." (EEOC Charge at 2-3.) Ramirez conspicuously omits any allegation of whether he was permitted to work remotely from April to September 2021. The only reasonable inference raised by the complaint is that Ramirez continued to work remotely during that period. That is insufficient to constitute adverse action. No more actionable is the allegation that the City refused to grant Ramirez's request on an indefinite basis. *See Brown*, 488 F. Supp. 2d at 407 (collecting cases).

Though Ramirez never casts them as such, the allegations that he was "disciplined" and given "poor evaluations" are also insufficient to constitute adverse actions. That is because not all discipline is actionable even under the lower standard for retaliation. For example, a "notice of discipline that does not create a materially adverse change in working conditions is not a materially adverse employment action" for the purposes of a retaliation claim. *Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 279 (N.D.N.Y. 2017) (citing *Weeks v. N.Y.S. (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001)); *see also Richards v. Dep't of Educ. of City of N.Y.*, No. 21-CV-338, 2022 WL 329226, at *17 (S.D.N.Y. Feb. 2, 2022) ("[T]he allegations that Plaintiff was ordered to hand-deliver a disciplinary letter, screamed at, told again she could not take her lunch at the end of the day, micromanaged, and publicly derided and humiliated fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that do not constitute retaliatory action." (quoting *White*, 548 U.S. at 68)). The threadbare complaint simply does not contain sufficient factual material to allege or imply that the discipline Ramirez experienced had any "materially adverse effect." *See Lyman v. NYS OASAS*, 928 F. Supp. 2d 509, 520 (N.D.N.Y. 2013). The same goes for the allegation that Ramirez was "denied" vacation time. Ramirez does not allege whether he was denied the wholesale accrual of vacation time,

which could be actionable, or only individual requests, which would not be. *See Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 270-72 (E.D.N.Y. 2019) ("[T]he denial of a single vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action [for the purposes of a Title VII retaliation claim]." (quoting *Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655, 2004 WL 5544995, at *4 (E.D.N.Y. May 11, 2004))); *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 376 (E.D.N.Y. 2015) ("The Court analyzes ADA retaliation claims under the same standard as Title VII retaliation claims." (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))).

Accordingly, the motion to dismiss the federal retaliation claims is granted.

**D.    Hostile Work Environment**

Ramirez does not meaningfully contest the City's arguments for dismissal of any hostile work environment claim, other than noting in conclusory fashion that the allegations in the complaint "do not constitute one discrete unlawful practice" and thus "cannot be isolated or minimized because they are pervasive." (Opp. at 2.). Ramirez thus abandoned any hostile work environment claim. *See Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n.3 (E.D.N.Y. 2022) (collecting cases). In any event, Ramirez's allegations do not rise to anything near the "severe or pervasive" treatment necessary to proceed on a hostile work environment theory. *Cf. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 200))). As is discussed more thoroughly above, Ramirez makes no allegation that he was forced

to actually endure an unsafe environment, and a single, unspecific instance of "discipline" is not actionable discrimination. *See Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) ("A reasonable person could have found the . . . incidents humiliating, and they were plainly offensive. But they were too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment.").

Accordingly, the motion to dismiss the federal hostile work environment claims is granted.

### E. State and Local Claims

Because the Court ultimately concludes that Ramirez has failed to state any federal claim, and there is no complete diversity between the parties (*see* Compl. ¶¶ 1, 3), it declines to exercise supplemental jurisdiction over the remaining state and local claims and accordingly does not consider Defendant's arguments to dismiss them. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). The NYSHRL and NYCHRL claims are dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings dismissing the complaint is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 24, to lift the stay, and to close the case.

SO ORDERED.

Dated: March 24, 2025
    New York, New York

_____
J. PAUL OETKEN
United States District Judge